IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TAVARIS LEE,
  Plaintiff,

vs.         Case No.:  3:15cv129/MCR/EMT

C. BLACKMON
and J. LANGFORD,
   Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Tavaris Lee ("Lee"), an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983.  Presently before the court is Defendants' Motion for Summary Judgment with Supporting Statement of Facts and Memorandum of Law, and supporting materials (ECF No. 22).  Lee filed a response in opposition to the motion for summary judgment, with an incorporated statement of facts and memorandum of law, and supporting materials (ECF No. 34).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); Fed. R. Civ. P.

72(b).   After careful consideration of all issues raised by the parties, it is the opinion

of the undersigned that Defendants' motion for summary judgment should be granted.

I.      BACKGROUND AND INTRODUCTION

At all time relevant to this action, Lee he was incarcerated at Blackwater River

Correctional Facility, an institution of the FDOC operated by The GEO Group, Inc.

(ECF No. 1 at 6–8).[1]  Lee claims that Defendant Blackmon, a licensed practical nurse,

and Captain J. Langford, a shift supervisor, were deliberately indifferent to his need

to be housed on the lower tier of the dormitory after he injured his right ankle/foot

(*id.*).  Lee claims that the day after they denied his request, he fell down a flight of

sixteen stairs, causing injury to his lower back and further injury to his ankle/foot

(*id.*).  Lee claims that Defendants' conduct violated the Fifth, Eighth, and Fourteenth

Amendments (*id.* at 9).  He also appears to assert a state law claim of negligence

against Defendant Blackmon (*id.*).   Lee seeks monetary damages against both

Defendants (*id.* at 10).  He also seeks injunctive relief (*id.*).

Defendants filed a motion for summary judgment, contending the undisputed

facts demonstrate that they were not deliberately indifferent to Lee's serious medical

needs (ECF No. 22).  Lee filed a response in opposition to the motion (ECF No. 34).

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

As explained below, the court concludes that Defendants are entitled to summary judgment in their favor.

II.    LEGAL STANDARDS

A.    Summary Judgment Standard

In order to prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his or her case or present affirmative evidence that the nonmoving party will be unable to prove his or her case at trial.  *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*, 477 U.S. at 248.  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*  The nonmoving party must show more than the

existence of a "metaphysical doubt" regarding the material facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  Speculation or conjecture from a party cannot create a genuine issue of material fact.  *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment."  Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324.   The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *See* Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him or her.  *See* Adickes v. S. H. Kress & Co.,

398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999).  Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove.  *See* Celotex Corp., 477 U.S. at 317.  A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

B.    Eighth Amendment Standard

The Eighth Amendment prohibits infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  Stating a claim under that clause requires satisfying two minima (from which the case law has ultimately derived four requirements):  First, there must be, objectively speaking, conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation—one "denying 'the minimal civilized measure of life's necessities.'" Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)).  Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish.  *See* Wilson, 501 U.S. at 300 ("The source of the intent

requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual *punishment*.  If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify.").

In the context of denial of medical care, each of these minima has been more specifically described as encompassing two subsidiary requirements.  To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively "serious medical need[ ]," Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), one that, if left unattended, "pos[es] a substantial risk of serious harm," Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994), and second, that the response made by public officials to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law, Estelle, 429 U.S. at 105–06.[2]  Similarly, to show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of "deliberate indifference," Estelle, 429 U.S. at

_____

[2] A corollary to this requirement for a great deal more than negligence is that a public official who does act reasonably in response to a serious medical need "cannot be found liable under the Cruel and Unusual Punishments Clause," Farmer, 511 U.S. at 845, "even if the harm ultimately was not averted," *id.* at 844.

105, which is in turn defined as requiring two separate things:  "aware[ness] of facts

from which the inference could be drawn that a substantial risk of serious harm exists

[ ] and . . . draw[ing of] the inference," Farmer, 511 U.S. at 837.  Ultimately, there are

thus four requirements:  an objectively serious need, an objectively insufficient

response to that need, subjective awareness of facts signaling the need, and an actual

inference of required action from those facts.  *See* Taylor v. Adams, 221 F.3d 1254,

1258 (11th Cir. 2000).

III.    ANALYSIS

      A.    Material Facts

As this case comes before the court on Defendants' motion for summary

judgment, the court is required to view the facts in the light most favorable to Lee, the

nonmoving party  *See* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th

Cir. 1993).  The court does so here, referring to Defendants' statement of facts, and

taking those facts from the parties' pleadings and summary judgment materials of

record. Fed. R. Civ. P. 56(c); N.D. Fla. Loc. R. 56.1.  Nevertheless, the court observes

that what are stated as "facts" herein for purposes of summary judgment review may

not be the actual facts.  *See* Montoute v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

With regard to the factual positions asserted by the parties, the court must apply the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions.**  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> . . . .
>
> **(4) Affidavits or Declarations.**  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (2010).  Facts asserted in hearsay statements which are not subject to a hearsay exception, and thus would not be admissible in evidence, are insufficient to show that a fact is genuinely disputed.

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment, or

grant summary judgment if the moving party's motion and supporting materials—including the facts considered undisputed—show that the moving party is entitled to it. *See* Fed. R. Civ. P. 56(e)(2, 3) (2010).

Applying these standards, the court conveys the following as the material facts for purposes of Defendants' motion for summary judgment.

On September 17, 2013, at approximately 1:44 p.m., Lee injured his right ankle and foot while playing basketball (ECF No. 1 at 6; ECF No. 22 at 2). Lee declared a medical emergency, and Defendant LPN Blackmon responded to the recreation yard (ECF No. 1 at 6). Lee was immediately taken to the medical department in a wheelchair and examined by LPN Blackmon (ECF No. 1 at 6; ECF No. 22 at 2; ECF No. 22-1, Affidavit of Cheryl Blackmon ¶ 5). LPN Blackmon questioned Lee about his injury and relevant medical history, and Lee stated that he had twisted his right ankle and foot while jumping in the recreation yard (ECF No. 22 at 2; Blackmon Aff. ¶ 6, Ex. A-1, Department of Corrections, Office of Health Services, Fracture/Dislocation/Sprain Protocol). LPN Blackmon examined Lee's vital signs and determined that they showed no cause for concern (*id.*). Blackmon physically touched and palpated the injured ankle (*id.*). She noted that the ankle was warm, had no tingling, and had quick capillary refill (less than 2 seconds) (*id.*). She also noted that

the skin around the injury site had good color and no breaks or bleeding (*id.*). Nonetheless, LPN Blackmon noted that, consistent with a twisted ankle, the ankle had some numbness and mild swelling (*id.*).  Lee was able to move his ankle (*id.*).  He voiced a pain level of 7 on a scale of 1 to 10 (*id.*).

Based upon her observations, LPN Blackmon determined that Lee's injury did not require immediate referral to the facility clinician (ECF No. 22 at 2; Blackmon Aff. ¶¶ 7–8, Ex. A-1, Fracture/Dislocation/Sprain Protocol).  Blackmon provided the following treatment:  (1) over-the-counter anti-inflammatory medication (ibuprofen); (2) tight wrap of the ankle in an Ace wrap and instruction regarding how to properly re-apply the wrap; (3) crutches to be used as needed; (4) a fourteen-day medical pass for the Ace wrap, crutches, and restricted activity; (5) medical authorization for Lee to return to the medical department at 7:00 a.m. the following morning to have his ankle re-evaluated for possible further treatment; (6) instruction regarding how to apply a covered ice pack for 15-20 minutes 3 to 4 times a day for the next 48 to 72 hours; (7) instruction to keep his ankle elevated as much as possible for the next 48 to 72 hours; (8) instruction to immediately report any skin discoloration or other change in symptoms; and (9) instruction on the use of crutches (*id.*; ECF No. 34, Ex. A, Florida Department of Corrections Health Slip/Pass).

Following the examination and instruction as to treatment, Lee informed LPN Blackmon that he was assigned to a cell on the upper tier of the dormitory and assigned to a top bunk (ECF No. 1 at 6–7).  Lee requested that LPN Blackmon issue him medical passes to be housed on the lower tier ("Lower-Floor pass") and in a low bunk ("Low/Bottom Bunk pass") (ECF No. 1 at 6–7; ECF No. 22 at 3; Blackmon Aff. ¶ 9).  Lee alleges it was obvious that he would struggle to navigate up and down the stairs, which he was required to do to eat, shower, and attend "call-outs" (ECF No. 34 at 6, Ex. F, Affidavit of Tavaris Lee ¶ 1).

A medical pass is "a written authorization (based on sound medical judgment) from health services to the other institutional offices that will permit an inmate certain relief from a departmental or institutional requirement which affects a special medical problem." (ECF No. 34, Ex. D, Florida Department of Corrections Office of Health Services, Health Services Bulletin 15.02.16, Inmate Medical Passes).  A nurse, such as LPN Blackmon, may issue a temporary pass that will not exceed fourteen days (*id.*).

All inmate medical passes are based on genuine medical need to enhance the resolution of a temporary condition or to facilitate the care and treatment of a permanent condition (Health Services Bulletin 15.02.16, Inmate Medical Passes).

There is no rule requiring that inmates who use crutches be issued a Lower-Floor pass; rather, the pass is assigned to inmates who "have severe mobility limitations or use wheelchairs" (*id.*; *see also* Blackmon Aff. ¶ 10).  According to FDOC policy, bunk assignment is a function of the housing officer (Health Services Bulletin 15.02.16, Inmate Medical Passes).  A medical request for a low bunk must be based on medical need only (*id.*).

Before deciding whether to issue a Lower-Floor pass or a Low/Bottom Bunk pass, LPN Blackmon consulted with her supervisor, Cathy Rudolph (Blackmon Aff. ¶ 11).  LPN Blackmon and Ms. Rudolph agreed that neither of the passes was medically necessary (*id.*).

Lee left the medical department using the crutches (ECF No. 1 at 7; *see also* ECF No. 34, Ex. E, Affidavit of Aaron S. Puryear Sr.).  Lee immediately approached Defendant Captain Jason Langford, the Shift Supervisor of the institution at that time (ECF No. 1 at 8; ECF No. 22 at 4; ECF No. 22-2, Affidavit of Captain Jason Langford ¶¶ 3, 6).  Captain Langford is not a medical doctor and has no formal medical training (Langford Aff. ¶ 4).  Lee requested that Langford move him to the lower tier and assign him to a low bunk (*id.*).  Lee states that Captain Langford told him that he would not move any inmates, except to confinement, because doing so would require

him to contact the warden (ECF No. 1 at 8).  Lee states he had personally observed Langford make many temporary housing assignment changes for various reasons, without obtaining approval from the warden (Lee Aff. ¶ 8).  Captain Langford states that when an inmate makes a request related to an alleged physical injury or other alleged medical problem, he does not grant or deny such requests; rather, he defers the decision to the trained medical staff (Langford Aff. ¶ 6).  Because Lee had just obtained medical treatment for his ankle, and the medical staff had determined that Lee had no medical need to be housed on the lower tier or in a low bunk, Captain Langford denied Lee's request (*id.*).

Lee required assistance from other inmates to ascend the staircase to the upper tier of the dormitory (ECF No. 1 at 7; Puryear Aff.).  Photographs of the staircase are included in the summary judgment record (ECF No. 34, Ex. C).  The photographs show that the staircase has sixteen stairs and handrails on both sides (*id.*).  The stairs do not have rubberized traction (Lee Aff. ¶ 2).

On September 18, 2013, the day after Lee's injury, he attempted to descend the staircase for breakfast using the crutches (ECF No. 1 at 7; Puryear Aff.).  Lee lost his balance and fell down the staircase (*id.*).  As a result of the fall, Lee suffered lower back pain and additional injury to his right ankle/foot (ECF No. 1 at 7–8; Lee Aff.

¶ 3).  Lee was evaluated by two registered nurses, who issued Lee a Lower-Floor pass and a Low/Bottom Bunk pass and ordered an x-ray of his right ankle/foot (ECF No. 34, Ex. A).

### B.    LPN Blackmon

Blackmon argues that the "deliberate indifference" prong of the Eighth Amendment standard is the crux of this case (ECF No. 22 at 6–8).  She contends the undisputed facts show that she immediately evaluated and treated Lee, and she gave due consideration to his request for Lower-Floor and Low/Bottom Bunk passes (*id.* at 7).  She contends that even if she was wrong about the severity of Lee's injury and his ability to maneuver about the institution, Lee can present no substantial evidence that her treatment plan was the result of "obduracy and wantonness," rather than "inadvertence or an error in good faith," or that her actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" (*id.* at 7–8 (quoting Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) and Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991))).

Lee argues that it was obvious that requiring him to navigate a staircase with crutches posed a substantial risk of serious harm to his health and safety.

As previously discussed, to prove that LPN Blackmon was deliberately indifferent to the risk that Lee would be injured, Lee must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goodman v. Kimbrough, 718 F.3 d1325, 1332 (11th Cir. 2013) (internal quotation marks omitted).  Proof of deliberate indifference requires a great deal more than does proof of negligence:  "To be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." Id. (internal quotation marks omitted).

In other words, a plaintiff in Lee's position must show not only that there was a substantial risk of serious harm, but also that LPN Blackmon "subjectively knew of the substantial risk of serious harm and that [s]he knowingly or recklessly disregarded that risk by failing to take reasonable measures to abate it." Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1583 (11th Cir. 1995) (citation omitted).  Whether prison officials had the requisite awareness of the risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that

the risk was obvious."  Farmer, 511 U.S. at 842 (citation omitted). At the same time, the deliberate indifference standard—and the subjective awareness required by it—is far more onerous than normal tort-based standards of conduct sounding in negligence. Goodman, 718 F.3d at 1332 (citation omitted).  And needless to say, to defeat a motion for summary judgment, Lee must adduce specific evidence from which a jury could reasonably find in his favor; "[t]he mere existence of a scintilla of evidence in support of [his] position will be insufficient." Anderson, 477 U.S. at 252.

Viewing the facts and taking all reasonable inferences in Lee's favor, the evidence shows that:  (1) Blackmon knew that Lee was transported to the medical department in a wheelchair; (2) Blackmon knew that Lee reported that he twisted his ankle, and that his pain level was 7 out of 10; (3) Blackmon knew that Lee had numbness and mild swelling of his ankle; (4) Blackmon inferred that Lee could not resume unrestricted activity, as evidenced by the fact that she issued a pass restricting his recreational activity; (5) Blackmon inferred that Lee would only be able to tolerate some weight-bearing on his right ankle, as evidenced by the fact that she issued crutches for him to use when he needed them, and he left the medical department using them; (6) Blackmon knew that Lee's injury required further evaluation, as evidenced by the fact that she scheduled him for re-evaluation and possible further

treatment by a more advanced nurse less than 24 hours later; (7) Blackmon knew that Lee would be required to navigate ascending and descending the stairway with crutches, if he chose to use the crutches; (8) Blackmon considered whether Lee's mobility limitations were sufficiently severe to warrant a Lower-Floor pass; (9) Blackmon consulted with her supervisor on the issue; and (10) Blackmon concluded that a Lower-Floor pass was not medically necessary.

Nurses and other such prison personnel are not deliberately indifferent when they <u>reasonably</u> follow the orders of a doctor or other supervisory medical personnel. *See* <u>Bauer v. Kramer</u>, 424 F. App'x 917, 919 (11th Cir. 2011) (emphasis added) (unpublished but recognized for persuasive authority); *see also* <u>Perez v. Fenoglio</u>, 792 F.3d 768, 779 (7th Cir. 2015) (although nurses may generally defer to instructions given by physicians, they have an independent duty to ensure that inmates receive constitutionally adequate care); <u>Holloway v. Delaware Cnty. Sheriff</u>, 700 F.3d 1063, 1075 (7th Cir. 2012) (holding that nurses may generally defer to instructions given by physicians unless it is clear that doing so will likely cause significant harm to the inmate).

The evidence would not support a reasonable jury's finding that requiring Lee to navigate the staircase, <u>which had handrails on both sides</u>, posed an obvious or

substantial risk of serious harm.[3] *See, e.g.*, <u>Mork v. Salt Lake Cnty.</u>, No. 2:03-CV-686 PGC, 2005 WL 3050990, at *5 (D. Utah Nov. 15, 2005) (unpublished) (concluding that there was no genuine issue of material fact regarding whether danger of prohibiting use of handrails on staircases was sufficiently serious to prevent grant of summary judgment in favor of defendant County; even assuming that County actually prohibited use of handrails to climb and descend staircases at the jail, this prohibition would be no more serious than having staircases without handrails at all, and numerous members of general public, even those on crutches, encounter and navigate such staircases every day).

Furthermore, the evidence does not support a reasonable inference that Blackmon inferred, from the facts of which she was aware, that requiring Lee to navigate the staircase posed a substantial risk of serious harm to his health or safety. Even if Blackmon incorrectly assessed the severity of Lee's mobility restrictions, her assessment did not evince an attitude of deliberate indifference or, correspondingly, a subjective intent to punish. At most, her actions were negligent. Therefore, LPN

---

[3] *Cf.* <u>Wilson v. Weisner</u>, 43 F. App'x 982, 987 (7th Cir. 2002) (unpublished) (district court erred in granting defendant correction officer's motion for summary judgment where prisoner had requested but not received, among other evidence, photographs of stairwell in discovery because "from [a photograph of the stairwell] a fact-finder could draw an inference as to the obviousness [or lack thereof] of the risk the stairs posed to inmates on crutches").

Blackmon is entitled to judgment as a matter of law on Plaintiff's constitutional claims.

C.   Captain Langford

Lee claims that Captain Langford's failure to move him to a lower tier cell due to his foot/ankle injury constituted deliberate indifference to his safety (ECF No. 1 at 8–9).  Langford contends he reasonably deferred to the trained medical staff on this issue (ECF No. 22 at 8).

Institutional staff who are not medical providers are not liable when they rely on the medical expertise of medical staff.  *See* Keith v. DeKalb Cnty., Ga., 749 F.3d 1034, 1050 (11th Cir. 2014); *see also* Berry v. Peterman, 604 F.3d 435 (7th Cir. 2010) (the law with respect to prisoners' Eighth Amendment deliberate indifference claims encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so); Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (a claim of medical indifference cannot generally be against non-medical personnel, unless they personally involved themselves with a denial of treatment or deliberately interfered with the medical treatment).  The law does not require that non-medical officials ignore the determination and recommendation of

medical staff.  *See* <u>Keith</u>, 749 F.3d at 1050; *see also* <u>Miltier</u>, 896 F.2d at 854 (prison officials are entitled to rely upon prison medical personnel to determine the medically proper course of treatment for an inmate, unless there is direct evidence to show that a warden or other supervisory official should not rely on this expertise); *see also, e.g.*, <u>Williams v. Limestone Cnty., Ala.</u>, 198 F. App'x 893, 897 (11th Cir. 2006) ("[S]upervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care.").

Here, Langford knew that Lee had just been evaluated by medical staff and that the medical staff had determined that Lee had no medical need to be housed on the lower tier.  Viewing the facts in the light most favorable to Lee (including that Langford was authorized to move Lee to a lower tier cell at least temporarily), no reasonable jury could conclude that Langford's reliance on medical personnel's determination constituted deliberate indifference.  *See, e.g.*, <u>Matthews v. Penn. Dep't of Corr.</u>, 613 F. App'x 163, 170–71 (3d Cir. 2015) (unpublished) ("Although corrections officers were aware of Matthews's difficulty descending from his top bunk, using the stairs, and moving about on crutches, they were also justified in trusting that the medical professionals who regularly treated Matthews would recommend a bunk or cell reassignment if he needed one.").  *But see* <u>Carbonell v.</u>

<u>Goord</u>, No. 99 CIV. 3208 (AJP), 2000 WL 760751, at \*\*2, 8 (S.D.N.Y. June 13, 2000) (unpublished) (inmate's account, if credited, was sufficient to give rise to inference that officer was aware that he was placing inmate—who had fractured his ankle and had previously been referred to an outside hospital's orthopedic unit for a cast and prescribed Percocet for pain—in serious danger by making him walk down steep stairs while on crutches and en route to physical therapy for his ankle and a hand injury).

      D.    <u>State Law Negligence Claim Against Defendant Blackmon</u>

It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over any state claims against a defendant. *See* <u>Baggett v. First Nat'l Bank of Gainesville</u>, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See also* <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. <u>Baggett</u>, 117 F.3d at 1353

(citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir.

1994); Exec. Software N. Am. v. United States Dist. Court, 15 F.3d 1484, 1493 (9th

Cir. 1994); New England Co. v. Bank of Gwinnett Cnty., 891 F. Supp. 1569, 1578

(N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga.

1994)).  The Eleventh Circuit has encouraged district courts to dismiss any remaining

state claims when the federal claims have been dismissed prior to trial.  *See* Raney v.

Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004).

Taking these factors into account in this case, the court concludes that any state

law negligence claim asserted by Lee should be dismissed to permit him to pursue it

in a more appropriate forum.  While it would be convenient for Lee to continue

litigating his case in this court, this court has a substantial number of original

jurisdiction cases awaiting review, and neither judicial economy nor fairness to other

litigants support retaining jurisdiction of Lee's state claim and delaying justice in

other cases.  Furthermore, the state court is best equipped to research and rule on

matters of state law, and comity would suggest that it should be allowed to do so.

Moreover, the supplemental jurisdiction statute contains a tolling provision.  *See* 28

U.S.C. § 1367(d) (state claims asserted in federal court along with "related" federal

claims "shall be tolled while the claim is pending and for a period of 30 days after it

is dismissed"); <u>Personalized Media Commc'ns, LLC v. Scientific-Atlantic, Inc.</u>, 493 F. App'x 78, 82 n.1 (11th Cir. 2012) ("'Section 1367(d), giving the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction, removes the principal reason for retaining a case in federal court when the federal claim belatedly disappears.'") (citation omitted).  In <u>Krause v. Textron Fin. Corp.</u>, 59 So. 3d 1085 (Fla. 2011), the Supreme Court of Florida held that Florida state law claims are tolled while they are pending in federal court, and the plaintiff shall have thirty days after dismissal by the federal court to re-file in state court.  *See id.* (citing 28 U.S.C. § 1367).  This is specifically "to prevent the limitations period from expiring" on the Florida state law claim while it is being pursued in federal court in conjunction with the federal claim.  *Id.* at 1091.  Therefore, Lee's pursuit of any state law claim in state court would not be prejudiced by this court's declining to exercise supplemental jurisdiction over those claims.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That Defendants' motion for summary judgment (ECF No. 22) be **GRANTED** as to Plaintiff's federal claims.

2.     That Plaintiff's state law claims be **DISMISSED without prejudice** to his pursuing them in state court;

3.      That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 22nd day of January 2016.

/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**